IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID DEIBLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-929 |
| ) | |
| NATIONWIDE MUTAL INSURANCE ) | |
| COMPANY, ) | Judge Cathy Bissoon |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

This is an action for breach of insurance contract and bad faith under Pennsylvania law. It was properly removed from the Court of Common Pleas in Jefferson County on the basis of diversity jurisdiction. Defendant has filed a motion for summary judgment on Plaintiff's bad faith claim (Doc. 38). For the reasons stated below, Defendant's motion for summary judgment is granted.

### BACKGROUND

**A. Factual Background**

The parties agree on the following set of facts regarding Plaintiff's motor vehicle accident and Defendant's subsequent investigation of the resulting claims. See generally Concise Statement of Undisputed Material Facts ("Concise Statement") (Doc. 40).[1] On

---

[1] Plaintiff did not file a responsive concise statement as mandated under Local Civil Procedure Rule 56(C)(1). Although the Court is free to accept as undisputed the facts asserted in the Concise Statement, out of an abundance of caution, the Court cites as fact those facts presented in the Concise Statement and not specifically contradicted in Plaintiff's briefing.

September 25, 2007, Plaintiff David Deibler was involved in a motor vehicle accident while operating his motorcycle. Id. at ¶ 2 . As a result of the accident, Plaintiff sustained multiple injuries, including injuries to his spine, arms, legs, head and neck. Compl. at ¶ 6. At the time of his accident, Plaintiff maintained a policy of insurance with Defendant Nationwide Insurance that provided liability coverage with limits up to $100,000 per person, $300,000 per accident, and $50,0000 in uninsured motorist limits. Concise Statement ¶¶ 5,6.

The driver of the other vehicle, Adam Greeley ("Greeley"), asserted a bodily liability injury claim against Plaintiff as a result of the accident, and the claim was assigned to a Nationwide Bodily Injury Claim Representative Jennifer McCormick ("McCormick"). Id. at ¶ ¶ 7,8. In investigating Greeley's claim, McCormick reviewed the police press report dated September 26, 2007, and the police report dated October 17, 2007. Id. at ¶¶ 9, 10. During the course of her investigation, McCormick attempted to contact Plaintiff by telephone on October 12, 2007, and November 15, 2007. Id. at ¶¶ 13, 21. On both occasions, McCormick was told, by a third party, that Plaintiff was recovering from his injuries, and had little to no memory of the accident. Id. It is not clear if McCormick requested to speak directly to Plaintiff and was refused, but it is undisputed that McCormick did not speak directly to Plaintiff during the course of her investigation.

Based on information contained in the police report, McCormick made an initial liability assessment that Plaintiff was 100% at fault for the accident. Id. at ¶ 16. On or about October 17, 2007, McCormick received notice from Greeley's insurance carrier that Greeley had no coverage for the vehicle he operated at the time of the accident and, therefore, offered Greely $5,000 to settle his bodily injury claim. Id. at ¶¶ 18, 19. In February 2008, Greely accepted the offer to settle and executed a release of all claims. Id.

On November 3, 2008, Deibler's attorney, contacted the Nationwide call center to open an uninsured motorist injury claim ("UIM claim"). Id. at ¶ 23. Dale Ressler was assigned to the UIM claim, and following an initial investigation that included a review of the police report, Plaintiff's policy, and a telephone interview of Greeley,[2] Ressler concluded that Deibler was more than 51% responsible for the accident. Id. at ¶ 25. On or about March 9, 2009, Ressler obtained Plaintiff's examination under oath ("EUO") and on or about December 11, 2009, obtained Greeley's EUO. Id. Based on the EUOs of Plaintiff and Greeley, Ressler determined there to be an issue of fact regarding fault and proposed binding arbitration. Id. at ¶¶ 32, 33. Prior to arbitration, Nationwide re-evaluated the claims and tendered the policy limits ($50,000) to Plaintiff. Id. at ¶46.

**B. Procedural Background**

Plaintiff brings a bad faith claim pursuant to 42 Pa.C.S.A. § 8371, alleging that Defendant unreasonably delayed payment on his UIM claim. Defendant moves for summary judgment claiming that there is no clear and convincing evidence to establish that it acted in bad faith in the evaluation of Plaintiff's UIM claim. Plaintiff disagrees and argues that summary judgment should be denied because the record illustrates that Defendant acted in bad faith in delaying payment when its investigators: (1) failed to obtain Plaintiff's statement in a timely manner; (2) failed to inform Plaintiff of his right to file an uninsured motorist claim; and (3) denied Plaintiff benefits based solely on the police report and the uninsured motorist's interview.

**ANALYSIS**

The allegations in this case include conduct during the investigation of Greeley's bodily injury claim and conduct during the investigation of the UIM claim. As to conduct in the bodily

---

[2] Although not stated in the Concise Statement, a review of Ressler's deposition transcript reveals that he conducted a telephone interview of Greeley prior to making his initial liability determination.

3

injury claim, Plaintiff argues that McCormick's failure to obtain his statement as well as her reliance on the police report and police press release in making her liability determination caused undue delay in the filing of his UIM claim. According to Plaintiff, had McCormick obtained his statement she would have determined that Plaintiff was not responsible for the accident and, thereby, informed him of his right to file an uninsured motorist claim. In addition, Plaintiff argues that Ressler's failure to immediately obtain his statement during the course of the UIM claim investigation is evidence of bad faith. Defendant counters with the argument that none of Plaintiff's allegations amount to bad faith. The Court agrees with Defendant.

There is little to no dispute as to the conduct alleged by Plaintiff: McCormick did not obtain Plaintiff's statement during the course of her investigation, Defendant did not inform Plaintiff of his right to file an UIM claim, and Ressler did make an initial decision to deny benefits based on information contained in Plaintiff's file (a file that did not, at the time, contain Plaintiff's statement). What Plaintiff cannot establish is that any of these acts, individually or in the aggregate, amount to bad faith under Pennsylvania law.

Pennsylvania case law is clear that a party that seeks to prove a bad faith claim must establish by clear and convincing evidence that the insurance company acted in bad faith without a reasonable basis for denying the claim, and that it knowingly or recklessly disregarded its lack of a reasonable basis to do so. W.V. Realty Inc. v. Northern Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003). While delay is a relevant factor in determining whether bad faith has occurred, "a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith." Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 588-89 (E.D. Pa. 1999); Williams v. Hartford Cas. Ins. Co., 83 F.Supp.2d 567, 572 (E.D. Pa. 2000). The primary consideration is "the degree to which a defendant insurer knew it had no basis to deny the claimant: if delay is

attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." Kosierowski, 51 F.Supp.2d at 589 (internal citations omitted).

A careful review of the record in this case does not yield clear and convincing evidence of bad faith by Defendant in the investigation and settlement of Plaintiff's UIM claim.[3] As to Plaintiff's argument that Ressler's failure to obtain his statement after the filing of his UIM claim is evidence of bad faith, it is clear that Ressler was precluded from contacting Plaintiff directly because he was represented by counsel at the time. Nonetheless, Ressler did arrange for Plaintiff's EUO in March 2009, four months after the claim was filed.

Further examination of the timeline of events demonstrates multiple delays in the investigation -- some attributable to Plaintiff, some attributable to third parties, and some attributable to Defendant. Plaintiff's accident occurred on September 25, 2007, and he filed his UIM claim on November 3, 2008. After review of the claim file and Greeley's statement, Ressler made an initial determination that Plaintiff was more than 51% negligent. At that point, Ressler determined that he would need to obtain Plaintiff's EUO. Plaintiff's EUO was taken on or about March 9, 2009. After obtaining Plaintiff's EUO, Ressler determined there to be a need for Greeley's EUO in order to "assess the more complete picture in a more comprehensive manner." Concise Statement ¶ 30. For reasons not clearly articulated by either party, Defendant encountered significant delay in obtaining Greeley's EUO. Greeley's EUO was finally taken on December 11, 2009. After obtaining both statements, Ressler determined there to be a factual

---

[3] Plaintiff's argument that McCormick's conduct in the investigation and settlement of Greeley's bodily injury claim is evidence of bad faith in his UIM claim is unpersuasive. Plaintiff's UIM claim was filed in November 2008 – nine months after the bodily injury claim was settled. McCormick was not involved in the investigation of Plaintiff's UIM claim, and therefore, her actions are not probative in the disposition of Plaintiff's bad faith claim. Cf. Condio v. Erie Ins. Exchange, 899 A.2d 1136, 1150 (Pa. Super. 2006) (no finding of bad faith when insurer did not act because a claim had not yet been filed.)

dispute between the parties and proposed arbitration.[4]  Delays were encountered in scheduling arbitration, including Plaintiff's decision to obtain an accident reconstruction report.[5]  After receipt of the accident reconstruction report, and before arbitration, Defendant tendered the policy limits.

Given the scope of the investigation, this period of time -- 30 months -- was neither unreasonable nor evidence of bad faith.  Furthermore, all delays were reasonably related to the need for further investigation.  Williams v. Hartford Cas. Ins. Co., 83 F.Supp.2d at 573 (holding that fifteen month delay in processing UIM claim was not bad faith); Quaciari v. Allstate Ins. Co., 998 F.Supp. 578, 582-83 (E.D. Pa. 1998) (finding that eleven month delay between notice of UIM claim and arbitration award was not bad faith).

The Court finds there to be no clear and convincing evidence that Defendant knew it had no basis to deny the UIM claim, and that all delays were attributable to the need to investigate further.[6]  As such, Defendant's motion for summary judgment is granted and Count II of Plaintiff's complaint is dismissed.

---

[4]  In briefing, Plaintiff does not disagree that the statements in the police report, Plaintiff's EUO and Greeley's EUO created a dispute of fact as to liability.

[5]  In a March 15, 2010 letter, Plaintiff's counsel re-scheduled the scheduled arbitration pending the receipt of an accident re-construction report.  See Concise Statement ¶ 36.

[6]  In briefing, Plaintiff makes the sweeping argument that multiple Nationwide employees assigned to claims associated with Plaintiff's accident violated the Nationwide Best Claims Practices Manual, and such evidence supports a claim of bad faith.  Pl's Br. pp. 10-15.  While evidence of actions made in violation of a company manual may be relevant and useful in evaluating a bad faith claim, those actions do not necessarily give rise to a bad faith claim. Smith v. Continental Casualty Co., 2009 WL 3214234, *3 (3d Cir. Sept. 21, 2009) (unpublished). Furthermore, and most importantly, Plaintiff fails to cite a single provision of the manual that was allegedly violated.  Without an articulation of the alleged violations, it is impossible for the Court to evaluate Plaintiff's argument. Plaintiff's offered excuse that citation to the manual would violate the protective order in the case is puzzling and unavailing, as Plaintiff is free to file its response, along with any citation to the manual, under seal.

**CONCLUSION**

For all the reasons stated above, Defendant's motion for summary judgment is granted.

## II. ORDER

For all the reasons stated above, the Court hereby ORDERS that Defendant's motion for summary judgment is granted, and Plaintiff's bad faith claim (Count II) is dismissed with prejudice.

**IT IS SO ORDERED**.

s/ Cathy Bissoon<br>
Cathy Bissoon<br>
United States District Judge

August 23, 2013

cc (via e-mail):

All counsel of record.